**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

CASE NO.: 9:19-cv-80368-DMM

RONNETTE HAYES,

       Plaintiff,

v.

COCO DULCE, INC.,
a Florida corporation, and
EMILIO PEREZ, individually,

       Defendants.

_____/

**DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT**

Defendants, COCO DULCE, INC. ("CDI"), and EMILIO PEREZ ("Mr. Perez"), individually ("Defendants") by and through undersigned counsel, and pursuant to *Fed. R. Civ. P. 56,* and *S.D. Fla. L.R. 56.1,* file their Motion for Final Summary Judgment, as follows:

**I.     INTRODUCTION**

For more than 100 days, Plaintiff and her counsel have been in possession of the corporate Defendant's tax returns which were *voluntarily produced* by the Defendants in this case. These tax returns demonstrate that the corporate Defendant never grossed in excess of $500,000.00 during any time period in which Plaintiff claims she was employed. Plaintiff has attempted to alternatively proceed on a theory of individual coverage that is not supported by any existing case law. The individual coverage arguments made by the Plaintiff, to date, have all been rejected by federal district courts in Florida. Plaintiff simply refuses to abandon her claims against these Defendants. There are no material issues of fact in dispute. For the reasons set forth below, Defendants are entitled to final summary judgment on all issues in this case.

## II.   BACKGROUND

### a.   The Initial Complaint

On March 15, 2019, Plaintiff, RONETTE HAYES ("Plaintiff") filed her initial Complaint against Defendants, COCO DULCE, INC. ("CDI") and EMILIO PEREZ ("Mr. Perez"), individually. *D.E. 1.* Plaintiff's initial Complaint alleged two (2) counts against Defendants: (i) Recovery of Overtime Compensation; and (ii) Liability Against Emilio Perez, individually. *Id.* The corporate and individual Defendants were both served with the Complaint and Summons on March 25, 2019. *D.E. 7; D.E. 8.* Defense Counsel filed its Notice of Appearance on April 10, 2019. *D.E. 9.* On April 11, 2019, the Defendants filed a Partially Unopposed Motion for Extension of Time to Respond to Plaintiff's Complaint. *D.E. 11.* This Honorable Court granted the Motion for Extension of Time to Respond to Plaintiff's Complaint, in part, and extended the deadline to respond to May 1, 2019.

### b.   The April 24, 2019 Conferral Letter and Corresponding E-mails

On April 24, 2019, after reviewing Plaintiff's original Complaint and conducting an investigation of the allegations and facts of this case, Defendants sent counsel for Plaintiff a conferral letter to bring multiple issues to his attention, including the fact that the corporate Defendant **never** grossed in excess of $500,000.00 in any of the time periods in which Plaintiff alleges herself to have worked for Defendants. *SUF ¶¶2-5; SUF ¶¶14-15.* As a courtesy, Defendants provided Plaintiff's counsel with a copy of the 2016, 2017, and 2018 U.S. Corporation Income Tax Returns for Coco Dulce, Inc. *Id.* Within the conferral letter dated April 24, 2019, Defendants further advised Plaintiff's counsel that the Complaint did not allege any good-faith basis for individual coverage under the FLSA. *Id.* On April 25, 2019, counsel for the Parties

conferred telephonically regarding the April 24, 2019, conferral letter.  *SUF ¶16.*  After this phone

conferral, Defense Counsel sent the following e-mail correspondence to Plaintiff's counsel:

> Chris,
>
> It was nice speaking with you over the phone today.  After you get an opportunity to review the pertinent case law on individual coverage, will you please advise us if you intend to amend the complaint before our response deadline approaches?  As we discussed on the phone, we believe the complaint (as drafted) does not sufficiently establish any basis for individual coverage under the FLSA.  We have already provided you the tax records to demonstrate that the company did not gross in excess of the jurisdictional threshold during the purported employment period alleged by your client.  Accordingly, we maintain that there is no possible way for your client to establish enterprise coverage in this case.  Since you are now in possession of the financial information that negates allegations within the complaint, I believe the proper procedure would be for the plaintiff to amend the complaint and include factual allegations that support individual coverage since enterprise coverage is impossible.  Please let us know your position so that we can plan accordingly.

*SUF ¶17.*

Plaintiff's counsel replied to this e-mail as follows:

> Jordan,
>
> I agree I should probably amend the complaint.  I am in depos out of town until Thursday morning.  We could do an agreed motion giving me until May 16thn to amend.  Let me know if you could prepare.  Thanks.

*Id.*

Then, on April 28, 2019, Defendants followed up with Plaintiff's Counsel, as follows:

> Chris,
>
> I have no problem putting together an agreed motion.  Just to be clear, in light of us producing the tax information regarding gross revenue, are you only going to be amending to allege individual coverage?

*Id.*

Plaintiff's Counsel then responded as follows:

> My understanding is that several businesses are run out of this enterprise. Furthermore I am convinced that my client has claims for minimum wage and the failure to pay all applicable payroll deductions. She was paid 350 a week for 51 hours and later 400 for 51 hours.. This is seriously abusive and exploitation.

*SUF ¶18.*

### c.  <u>The Amended Complaint and Fully Briefed Motion to Dismiss</u>

On May 16, 2019, Plaintiff filed her Amended Complaint against the corporate and individual Defendants. *D.E. 23; SUF ¶19.* Plaintiff's Amended Complaint asserts four (4) counts against Defendants: (i) Plaintiff's Claim for FLSA Violations; (ii) Florida Minimum Wage Act; (iii) Willful Filing of Fraudulent Information Returns; and (iv) Liability Against Emilio Perez, individually. *Id.* Notably, the Amended Complaint **does not** allege (or ever mention in any conceivable way) that "several businesses are run out of the enterprise" as referenced by Plaintiff's counsel's e-mail on April 28, 2019. *D.E. 23; SUF ¶20.* On May 23, 2019, Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint. *D.E. 24.* The Motion to Dismiss cites well-settled case law on the issue of individual coverage. *Id.* Plaintiff nevertheless filed a Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint with Prejudice on June 6, 2019, and argued that her allegations for individual coverage were sufficient – a position unsupported by the case law on point. *D.E. 27.* Within her Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint with Prejudice, Plaintiff provides no explanation as to why her employment gives rise to individual coverage under the FLSA. *Id.* Moreover, within her Response in Opposition to the Motion to Dismiss, Plaintiff voluntarily withdrew Count III - Willful Filing of Fraudulent Information Returns. *SUF ¶22.* It is abundantly clear that Plaintiff withdrew Count III of her Amended Complaint because there was no basis for

it to have been filed in the first place.  Plaintiff used Defendants' *voluntary* production of tax documents on April 24, 2019, as an opportunity to allege additional meritless claims against Defendants by using CDI's Form 1120 to concoct a legally insufficient claim under Section 7434 in hopes of pressuring Defendants to settle this case notwithstanding Plaintiff's inability to prove that any violation of law ever occurred.  *SUF ¶21; D.E. 24, n. 2.*  Defendants filed their Reply in Support of the Motion to Dismiss Plaintiff's Amended Complaint with Prejudice on June 18, 2019. *D.E. 30.*  The Motion to Dismiss is fully briefed and pending adjudication before the Court.  *D.E. 24; D.E. 27; D.E. 30.*

Discovery is now closed. *D.E. 16.*  This case could have (and should have) been voluntarily dismissed by the Plaintiff on April 24, 2019, when Plaintiff and her counsel took possession of the company tax returns.  The defendant Corporation **never** grossed in excess of $500,000.00 when Plaintiff alleges herself to have performed work for the company.  *SUF ¶¶2-5.*  Accordingly, there is no enterprise coverage as a matter of law.  Furthermore, Plaintiff cannot demonstrate that she is subject to individual coverage under the FLSA.  Mr. Perez has no joint-employer liability under the FLSA as a matter of law because there is no enterprise or individual coverage.  Additionally, Plaintiff never provided the corporate or individual Defendant with any pre-suit notice regarding her purported claims under the Florida Minimum Wage Act ("FMWA").  *SUF ¶23.*  Even if there was FLSA coverage over this dispute (which there is not), Plaintiff's failure to properly serve this pre-suit notice on the Defendants is fatal to her FMWA claims.  As set forth fully below, final summary judgment should be entered for the Defendants immediately.

### III.   **SUMMARY JUDGMENT**

####   a.  **Standard of Review Under *Fed. R. Civ. P. 56***

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact the moving party is entitled to a judgment as a matter of law.  *See, e.g.,* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); *see, also,* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); *Fed. R. Civ. P. 56*.  The purpose of a summary judgment motion is to isolate and terminate all claims that are factually unsupported.  *See, e.g.,* Celotex Corp., 477 U.S. 317 (1986). Once a party has moved for summary judgment, Fed. R. Civ. P. 56(e) requires the nonmoving party to go beyond the pleadings and submit her own affidavits, depositions, answers to interrogatories, or admissions on file, to designate specific facts showing that there is a genuine issue for trial.  *See, e.g.,* Celotex Corp., 477 U.S. at 324.  A party defending against summary judgment has the burden of responding to evidence with "relevant and admissible evidence sufficient to rebut."  *See, e.g.,* Gregory v. Quality Removal, Inc., 2014 WL 5494448 at *3 (S.D. Fla. 2014) *citing* Scott v. K.W. Max Investments, Inc., 256 Fed. Appx. 244, 247 (11th Cir. 2007). Issues of material fact cannot be created by conclusory allegations.  *See, e.g.,* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Furthermore, a mere scintilla of evidence, self-supporting evidence, and evidence that is not admissible at trial is not enough to defeat summary judgment.  *See, e.g.,* Anderson, 477 U.S. at 242.  Moreover, where a subsequent affidavit is inconsistent with a prior sworn deposition, the Court shall disregard the affidavit.  *See, e.g.,* Holley Equip. Co. v. Credit Alliance Corp., 821 F.2d 1531, 1537 (11th Cir. 1987).  An "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing

a genuine issue for trial." *See, e.g.,* <u>Martin v. Briceno</u>, 2014 WL 2587484 at *1 (S.D. Fla. 2014) *citing Fed. R. Civ. P. 56(e)*. Summary judgment shall be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See, e.g.,* <u>Guzman v. Irmadan, Inc.</u>, 551 F.Supp.2d 1368, 1369 (S.D. Fla. 2008) *citing Fed. R. Civ. P. 56(c)*. If any of the evidence by the non-moving party is "merely colorable, or is not significantly probative," then summary judgment should be granted. *See, e.g.,* <u>Martin</u>, 2014 WL 2587484 at *2 *citing* <u>Lamonica v. Safe Hurricane Shutters, Inc.</u>, 578 F.Supp.2d 1363, 1365 (S.D. Fla. 2008).

## IV.   MEMORANDUM OF LAW

### a.   Coverage under the Fair Labor Standards Act ("FLSA")

In order to be eligible for FLSA overtime [or minimum wage], an employee must first demonstrate that she is "covered" by the FLSA. *See, e.g.,* <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, 662 F.3d 1292, 1298 (11th Cir. 2011); *see, also,* <u>Cimeus v. Vestige Security, Inc.</u>, 2017 WL 9288587 (S.D. Fla. 2017) *citing* <u>Brock v. Rusco Indus., Inc.</u>, 842 F.2d 270, 272 (11th Cir. 1988). There are two possible types of FLSA coverage: enterprise coverage and individual coverage. *Id.*

#### i.   Enterprise Coverage Does Not Exist as a Matter of Law

Enterprise coverage requires a showing that the employer:

(a) has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; ***AND***

(b) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

*29 U.S.C. § 203(s)*(emphasis added).

The most salient element of an "enterprise" allegation is the amount of business a defendant does. *See, e.g.,* <u>Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.</u>, 2008 WL 793660, at \*1 (M.D. Fla. 2008) *quoting* <u>Farrell v. Pike</u>, 342 F.Supp.2d 433, 439 (M.D.N.C. 2004). A company does not attain "enterprise coverage" until the year in which its gross sales exceed $500,000.00. *See, e.g.,* <u>Alonso v. Garcia</u>, 147 Fed. Appx. 815 (11th Cir. 2005). An employer is only considered to be an "enterprise engaged in commerce" if it has two or more employees who are engaged in commerce and it has gross sales in excess of the $500,000.00 threshold. *See, e.g.,* <u>Amorim v. GMR International Cuisine, Inc.</u>, 2017 WL 3835860, at \*3 (M.D. Fla. 2017).

### (1) <u>CDI Never Grossed in Excess of $500,000.00 During the Time Period Alleged Within Plaintiff's Amended Complaint</u>

Plaintiff alleges that she worked for the Defendants from May 2016 until 2018. *D.E. 23*. It is undisputed that the corporate Defendant, CDI, did not gross in excess of $500,000.00 in 2016, 2017, or 2018. *SUF ¶¶2-5*. In 2016, CDI grossed $310,607.00. *SUF ¶2*. In 2017, CDI grossed $272,108.00. *SUF ¶3*. In 2018, CDI grossed $303,075.00. *SUF ¶3*. Plaintiff has been in possession of the CDI tax returns since April 24, 2019, when they were voluntarily produced in an attempt to end this meritless litigation. *SUF ¶15*. Accordingly, Plaintiff has known that her claims are meritless for over twelve (12) weeks now. *Id.* There is no disputed issue of material fact as to the gross annual revenue for CDI. <u>Abreu v. Russian Palace, Inc.</u>, 2014 WL 11412749, at \*2 (S.D. Fla. 2014); *see, also,* <u>Batista v. WM International Group, LLC</u>, 2016 WL 1077105, at \*3 (S.D. Fla. 2016). Accordingly, there is no enterprise coverage over the corporate Defendant and there is no subject matter jurisdiction over this dispute. The Court should award Defendants summary judgment on this issue immediately.

### (2) <u>Plaintiff Has No Evidence To Refute the Gross Annual Sales for CDI</u>

The tax returns produced by Defendants are sufficient to demonstrate an FLSA defendant's annual gross volume of sales made or business done.  *See, e.g.,* <u>Salle v. Nivarna Invs. LLC</u>, 2015 WL 7272681, at *3 (M.D. Fla. Nov. 18, 2015).  Plaintiff cannot make a conclusory assertion that an employer has understated in income on its tax returns merely to avoid summary judgment. *See* <u>Batista</u>, 2016 WL 1077105, at *3. Rather, a plaintiff must provide "concrete, admissible evidence" that the employer meets the statutory revenue requirements under the FLSA. *See Id. citing* <u>Josendis</u>, 662 F.3d at 1317. Indeed, it is not the Defendants' burden to disprove enterprise coverage; it is the plaintiff's burden to show that it exists.  <u>Batista</u>, 2016 WL 1077105 at *3 *citing* <u>Whineglass v. Smith</u>, 2013 WL 2237841, at *12. A plaintiff's conclusory allegation that a company understated its income on its tax returns is not "worthy of credence." *See* <u>Lopez v. Top Chef Inv., Inc.</u>, 2007 WL 4247646, at *3 (S.D. Fla. Nov. 3, 2007).

Plaintiff has no evidence that CDI grossed over $500,000.00 annually.  Plaintiff never had access to the Defendants' invoices.  *SUF ¶8.*  Plaintiff never had access to Defendants' bank accounts.  *SUF ¶9.*  Plaintiff never had access to Defendants' accountant. *SUF ¶10.*  Plaintiff was not the company bookkeeper and never had access to the company books.  *SUF ¶¶11, 13.*  Plaintiff, a self-purported liquor store clerk, cannot provide any competent testimony regarding the annual gross revenue for CDI.  *SUF ¶¶12, 14.*  When interviewed for her position, Plaintiff did not have any formal education or experience in book keeping, accounting, or finance.  *SUF ¶7.*  Plaintiff cannot demonstrate that the corporate Defendant is an enterprise covered under the FLSA during the time period she alleges herself to have worked there.

## ii.    Individual Coverage Under the FLSA Does Not Exist

The only other way for Plaintiff to establish coverage under the FLSA is through individual coverage.  An employee is subject to individual coverage under the FLSA **only** if she is "*directly and regularly* engaged in interstate commerce" [emphasis added].  *See, e.g.,* Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011).  To satisfy individual coverage, the plaintiff **must** be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of commerce, *e.g.,* transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.,* regular and recurrent use of interstate telephone, telegraph, mails, or travel.  *See, e.g.,* Josendis, 662 F.3d at 1315-16 *citing* Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006); McLeod v. Threlkeld, 319 U.S. 491, 493-98 (1943), *see, also,* Casanova v. Morales, 2007 WL 4874773 (S.D. Fla. 2007) *affirmed* 262 Fed. Appx. 164 (11th Cir. 2008) (no individual coverage where plaintiff purchased supplies that moved through interstate commerce to undertake his employment with home remodeling company);[1] Thompson v. Robinson, Inc., 2007 WL 2714091 (M.D. Fla. 2007) (no individual coverage where cook prepared foods that originated in another state).  In order to demonstrate individual coverage under the FLSA, a plaintiff must provide straightforward allegations connecting the work he performs for his employer to *interstate* commerce.  *See, e.g.,* Attai, 2016 WL 828816 at *3 *citing* Ceant v. Aventura Limousine & Transp. Serv., Inc., 874 F.Supp.2d 1373, 1378 (S.D. Fla. 2012).

---

[1] In Cassanova, 2007 WL 4874773, the plaintiff was hired to do remodeling work on a residential home in Miami, and claimed that FLSA coverage existed because he ordered, picked up, and used materials which had traveled in interstate commerce.  *Id.*  However, the court expressly rejected the plaintiff's argument, because Congress intended to regulate ***only*** activities constituting interstate commerce, not activities merely *affecting* commerce.  *Id.* at *4 *citing* Thorne, 448 F.2d 1264 (11th Cir. 2006).

Here, after Defendants made it abundantly clear that Plaintiff could not demonstrate individual coverage in this lawsuit, Plaintiff *still* alleged within her Amended Complaint that she was "individually engaged in commerce." *D.E. 23, ¶ 6.* In support of her claim for individual coverage, Plaintiff includes only the following allegations:

> At times during her employment, Plaintiff's work involved handling on a regular and recurrent basis "goods" or "materials" as defined by the FLSA which were used commercially in Defendant Coco Dulce's business and moved in interstate commerce. Specifically, **the Plaintiff handled records of interstate transactions such as taking credit card payments from in-state and out-of-state customer, and processed same on an Internet based interstate POS payment processing system which allowed automatic deduction from customers' out of state checking and credit accounts; handled and sold tobacco, beer, and other liquors which some were originally manufactured outside the state of Florida; contacted vendors to place orders for tobacco and beer; and stocked merchandise in liquor store**.

*D.E. 23, ¶15.*

### i. Use of a Credit Card, the Telephone, or the Internet is Insufficient to Establish Individual Coverage

Defendants have thoroughly briefed the issue of individual coverage within their Motion to Dismiss Plaintiff's Amended Complaint with Prejudice and the Reply in support thereof. *D.E. 24; D.E. 30.* To recap, prior courts in the Southern District of Florida have firmly held that "using a credit card, telephone, or internet as 'instrumentalities of commerce'" is insufficient for individual coverage under the FLSA. *See, e.g.,* Amadon v. Delivery Dudes, LLC, 2017 WL 7792707 at *3 (S.D. Fla. 2017) *citing* Joseph F. Nichell's Carribbean Cuisine, Inc., 862 F.Supp.2d 1309, 1313 (S.D. Fla. 2012) (collecting cases finding that usage of credit cards is insufficient for FLSA individual coverage). Moreover, merely using a telephone or the internet **does not** evidence regular use of the instrumentalities of interstate commerce. *Id.*

Other federal courts in Florida have likewise held that receiving payment for goods and services via interstate credit card transactions is insufficient to support individual coverage. *See, e.g.*, Westley v. Love Pet Grooming Salon, Inc., 2019 WL 249716 at *5 (M.D. Fla. 2019) *citing* Schamis v. Josef's Table, LLC, 2014 WL 1463494, at *4 (S.D. Fla. 2014); Martin, 2014 WL 2587484, at *3; Thorne, 448 F.3d at 1267; Joseph, 862 F.Supp.2d at 1313. Furthermore, accepting credit card payments from out-of-state customers when they come to Florida is also insufficient to support individual coverage. *Id. citing* Mayo v. Jean Nicole Hari Salons, Inc., 2015 WL 4751202, at *3 (M.D. Fla. 2015). In Martin v. Briceno, 2014 WL 2587484 at *3, Judge Moreno addressed the very same issue regarding individual coverage on summary judgment. *Id.* There, the Court held that it had "previously determined that there is no 'individual coverage' under FLSA when a plaintiff works as a waiter/cashier and (a) processes credit and debit card purchase transactions; (b) serves food prepared with ingredients that had crossed state lines; (c) serves beverages produced out-of-state; and (d) serves customers from out of the state. *Id. citing* Joseph, 862 F.Supp.2d 1309, 1312 (S.D. Fla. 2012); McLeod, 319 U.S. at 496.

Here, the Plaintiff's alleged "processing" of credit and debit card purchases and "handling" of liquor bottles and tobacco is no different.

> ### ii. **Plaintiff's Purported Handling of Goods or Materials that Moved in Interstate Commerce is Irrelevant for Purposes of Individual Coverage**

Plaintiff's Amended Complaint alleges that her work for Defendants "involved handling on a regular and recurrent basis 'goods' or 'materials' as defined by the FLSA which were used commercially in Defendant Coco Dulce's business and moved in interstate commerce." *D.E. 23, ¶15.* But unlike enterprise coverage, which does consider whether the employees handle materials that have been moved in interstate commerce, individual coverage is not affected by the handling

of such materials.  *See, e.g.,* <u>Westley</u>, 2019 WL 249716 at *4 *citing* <u>Polycarpe v. E&S Landscaping Service, Inc.</u>, 616 F.3d 1217, 1220-21 (11th Cir. 2010).  Accordingly, the plaintiff's purported handling of "goods" or "materials" is irrelevant and insufficient to support individual coverage, and even if true, these allegations cannot overcome summary judgment on this issue.

      iii.  **<u>Plaintiff's Mere Contact with Unspecified Vendors is Insufficient to Establish Individual Coverage</u>**

Plaintiff alleges that she "contacted vendors to place orders for tobacco and beer" but never specified (a) who these vendors were; or (b) where these vendors were located.  *D.E. 23, ¶15.* Accordingly, Plaintiff has failed to establish that these alleged communications had *any* interstate nature whatsoever and therefore fails to establish individual coverage on this basis.  *See, e.g.,* <u>Amadon</u>, 2017 WL 7792707 at *3 ("While use of interstate telephone may be sufficient to establish individual coverage, Plaintiff does not allege that he used the telephone or internet to communicate with out-of-state customers") *citing* <u>Lefevre v. La Cote Basque Winehouse, Inc.</u>, 2015 WL 6704107, at *1 (M.D. Fla. 2015).  Moreover, even if these allegations are true, other courts have rejected this as a basis for establishing individual coverage under the FLSA.  *See, e.g.,* <u>Martin</u>, 2014 WL 2587484 at *3.  Plaintiff cannot demonstrate individual coverage under the FLSA as a matter of law and the Court should award Defendants summary judgment on this issue.

      b.  **<u>Florida Minimum Wage Act</u>**

Pursuant to *Fla. Stat. § 448.110(3)*:

> Only individuals entitled to receive the federal minimum wage under the FLSA and its implementing regulations shall be eligible to receive the state minimum wage pursuant to Art. X, Section 24 of the State Constitution and *Fla. Stat. 448.110.*

*Id.*

There is no enterprise coverage in this case.  There is no individual coverage in this case. Plaintiff's failure to demonstrate that the FLSA is applicable to this dispute ***expressly*** bars her from recovering any amounts under Florida's minimum wage law and warrants immediate dismissal of any state law claims with prejudice.  Any claims arising under Art. X, Section 24 of the Florida Constitution are barred for the same reasons.  *Fla. Stat. § 448.110* provides exclusive remedies under state law for violations of Art. X, Section 24 of the Florida Constitution and this provision of the Florida Constitution incorporates the FLSA, including its exceptions and exemptions, into the minimum wage amendment.  *See Florida Op. Atty. Gen., 2005-64 (2005 WL 3132090).*

Furthermore, Plaintiff failed to comply with conditions precedent pursuant to *Fla. Stat. § 448.110(6)(a)* before filing either of her Complaints in this case.  *SUF ¶24.*  The statutory fifteen (15) day pre-suit notice was never provided to the individual or corporate Defendant.  *Id.;  See Fla. Stat. § 448.110(6)(b).*  Plaintiff **never** identified: (1) the minimum wage to which she claims to be entitled; (2) the actual estimated hours for which payment is sought; (3) the total amount of alleged unpaid wages through the date of any such notice; or (4) any other notification of Plaintiff's intent to initiate the present action.  *Id.*  This completely contradicts the allegations set forth within Paragraph 32 of Plaintiff's Amended Complaint and mandates an immediate dismissal.  *D.E. 23, ¶32.  See,* Melgar v. M.I. Quality Lawn Maintenance, Inc., 2011 WL 589992, at *2 (S.D. Fla. Feb. 10, 2011) (Granting Defendants' Motion for Partial Summary Judgment and dismissing the Florida Minimum Wage Act claim for failure to provide pre-suit notice).

### c.  **Individual Employer Liability**

An individual defendant's liability under the FLSA is only derivative of the corporate Defendant's liability.  *See, e.g.,* Zarate v. Jamie Undergound, Inc., 629 F.Supp.2d 1328 (S.D. Fla. 2009) *citing* Milbourn, 588 F.Supp.2d at 1346 (liability of corporate officer derivative of liability

of corporation; where corporation is not subject to suit, officer is entitled to summary judgment) *citing* <u>Patel v. Wargo</u>, 803 F.2d 632, 637 (11th Cir. 1986).  Here, there is no subject matter jurisdiction over the FLSA claims.  Accordingly, Mr. Perez is entitled to summary judgment on the issue of joint-employer liability.

## V.    <u>CONCLUSION</u>

There is no enterprise or individual coverage in this FLSA lawsuit.  There is no meritorious claim in this case.  There never was.  Plaintiff and her counsel have ignored dispositive evidence (the company tax returns), they have concocted unsupported claims (the 7434 claim), they have failed to comply with conditions precedent under the FMWA, they have intentionally disregarded case law on individual coverage, and have otherwise refused to abandon the claims in this case, thus causing Defendants to incur unnecessary fees and expense.  At the very least, this lawsuit should have been dismissed *months* ago.  It was not.  The Court should, most respectfully, enter summary judgment for Defendants immediately and reserve jurisdiction for Defendants to move for attorney's fees and costs incurred in the defense of this completely frivolous lawsuit.

WHEREFORE, for the reasons set forth herein, Defendants, COCO DULCE, INC., and EMILIO PEREZ, individually, respectfully requests that this Honorable Court enter an order: (a) awarding Defendants Final Summary Judgment; (b) dismissing Plaintiff's Complaint with prejudice; (c) reserving jurisdiction for Defendants to file a Verified Motion for Attorney's Fees and Costs under S.D. Fla. L.R. 7.3; and (d) entering any and all such further relief as is deemed just and equitable under the circumstances.

Dated this 5th day of August, 2019.

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS**
**JORDAN RICHARDS, PLLC**
805 E. Broward Blvd. Suite 301
Fort Lauderdale, Florida 33301
(954) 871-0050
*Counsel for Defendants*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
MELISSA SCOTT, ESQUIRE
Florida Bar No. 1010123
*jordan@jordanrichardspllc.com*
*melissa@jordanrichardspllc.com*
*jake@jordanrichardspllc.com*
*stephanie@jordanrichardspllc.com*
*mike@usaemploymentlawyers.com*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing motion was served on all parties listed

below via the CM/ECF on August 5, 2019.

*/s/ Jordan Richards, Esq.*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST:

**CHRISTOPHER J. RUSH, ESQUIRE**
Florida Bar No. 621706
*crush@crushlawfl.com*
CHRISTOPHER J. RUSH & ASSOCIATES, P.A.
Compson Financial Center, Suite 205
1880 North Congress Avenue
Boynton Beach, Florida 33426
Ph: (561) 369-3331
Fax: (561) 369-5902
*Counsel for Plaintiff*